# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSTANTINE J. GREGORIA, et. al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **12-4315** |
| TOTAL ASSET RECOVERY, INC., et. al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**Stengel, J.**                                                    **January 7, 2015**

Constantine J. Gregoria and Christie J. Hudson bring this action against Total Asset Recovery, Inc., and its owner and CEO Matthew Howard alleging violations of the Fair Debt Collection Practices Act,[1] 15 U.S.C. § 1692, et seq., and the Racketeer Influenced and Corrupt Organizations Act,[2] 18 U.S.C. § 1962(c). These claims arise from the repossession of the plaintiffs' car as collection for an allegedly usurious loan. The defendants filed a motion to dismiss pursuant to Rules 12(b)(6), 12(b)(7), and 19 of the Federal Rules of Civil Procedure, and the plaintiffs responded. For the following reasons, I will grant the motion in part.

---

[1] Title 15 of the United States Code, Section 1692(e) provides that the purpose of this Act is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

[2] Title 18 of the United States Code, Section 1962(c) provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

## I.      BACKGROUND

The plaintiffs were the owners of a 2006 Nissan Altima with a clear title, valued at over $10,000. The vehicle was titled, registered, and licensed in Pennsylvania, and was kept at the plaintiffs' personal residence in Marcus Hook. The plaintiffs were in need of a personal loan and went to a Delaware company known as Delaware Title Loans [DTL] for an auto title loan. The complaint describes an auto title loan as a "small personal loan issued at an enormous triple digit rate of interest, secured by a borrower's car. The loans are used to exploit people with poor credit and a crushing need for cash."

Beginning in June 2011, DTL entered into a series of five loan agreements with the plaintiffs wherein it lent the plaintiffs a total of $4,039 at 150% A.P.R. The plaintiffs were able to repay $2,013 but most of that money was applied to interest. By December 2012, the monthly payment for these loans had reached $630. Because the plaintiffs were late on their payments for February and March 2012, DTL sought to repossess their vehicle.

The complaint alleges that Defendant Total Asset Recovery [TAR], under the authority of Defendant Matthew Howard, agreed to work for DTL to repossess the plaintiffs' vehicle. TAR is a Delaware corporation. The complaint further alleges that "Total Asset Recovery is in the automobile repossession business and qualified as a debt collector under the Fair Debt Collection Practices Act." Its principal business is the collection of debts through the enforcement of security interests and uses various instrumentalities of interstate commerce in the course of its business including motor vehicles (tow trucks), the internet, telephones, and the mail.

On April 25, 2012, TAR "crossed the border into Pennsylvania" and repossessed the plaintiffs' vehicle in the vicinity of their home. The complaint insists that the repossession was performed pursuant to the express authorization and direction of Mr. Howard who had decided that his business would perform repossessions within Pennsylvania to enforce usurious auto title loans from Delaware. The plaintiffs believe that the defendants agreed to this repossession either knowing that the auto title loan was illegal or without performing any due diligence to determine the validity or legality of the loan or their right to enter Pennsylvania and repossess a car to enforce a 150% annual interest rate.

The plaintiffs had various personal effects and possessions in their vehicle which have never been returned to them. Although the car was valued at over $10,000, the plaintiffs have not received any money back from the repossession. Accordingly, in bringing this action, the plaintiffs seek in Count I an award of actual and statutory damages including damages for the deprivation of their vehicle, expenses for alternative transportation, emotional distress, attorney's fees, and costs. In Count II, they seek an award of damages against Defendant Howard equivalent to three times their actual damages including their economic and noneconomic injuries.

## II.    STANDARD

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

3

47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). Id. at 1965; Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), I may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben.Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). I must accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). However, I am not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint will survive a motion to dismiss. Bell Atlantic Corp., 127 S. Ct. at 1965, 1974; Victaulic Co. v. Tieman, 499 F.3d 227, 234-35 (3d Cir. 2007).

## III.     DISCUSSION

### A.       Count I - Fair Debt Collection Practices Act

Plaintiffs seek relief from TAR through Section 808 of the Fair Debt Collection Practices Act [FDCPA]. 15 U.S.C. § 1692f(6)(A). Pursuant to the statute, a "debt collector may not … tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security instrument." Id. For the purposes of this section of the FDCPA only, the term debt collector includes "... any business the principal purpose of which is the enforcement of security interests." § 1692a(6). A repossession agency, such as TAR, is an enforcer of security interests. *See* Jordan v. Kent Recovery Servs., Inc., 731 F. Supp. 652, 657 (D. Del. 1990). There appears to be no real dispute that TAR falls within the ambit of the statute. Mot. to Dismiss 8.

The issue for this motion to dismiss is whether DTL had a present right to possession of the vehicle. This point is critical because the FDCPA imposes no liability on a repossessor "who enforce[s] security interests when a 'present right' to the collateral exists…." Jordan, 731 F. Supp. at 657. Plaintiffs allege that the loan agreement is not legally enforceable because the 150% APR violates Pennsylvania Law. Noting that the contract provides that it shall be governed by Delaware Law, Defendants contend that, even if Pennsylvania law applies, the note is not void, and DTL had a present right of possession in the vehicle when plaintiffs were late on their payments for February and March 2012.

To resolve this dispute, I must first decide whether Pennsylvania or Delaware law governs the agreement. Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 621 (3d Cir. 2009) ("[Plaintiff] argues that the contract is unconscionable under Pennsylvania law, a challenge that requires us to conduct a choice of law analysis inasmuch as Delaware law is specified in the contract."). In a federal question case, I look to the choice of law principles of the forum state to determine which state's law applies. Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) (applying the rule of Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) to federal question cases). Accordingly, I will apply Pennsylvania's choice of law principles. In doing so, my analysis is controlled by the Third Circuit's decision in Kaneff which interpreted an identical title loan agreement between a Pennsylvania borrower and DTL.[3] 587 F.3d at 621-624.

Under Pennsylvania choice of law principles, I must first determine if a true conflict exist. A 150% annual interest rate applies to the loan agreement between Mr. Gregoria and DTL. Such an exorbitant rate of interest is perfectly legal and enforceable in Delaware which has no usury laws. Id. at 622. On the other hand, Pennsylvania's Loan

---

[3] Defendants attempt to distinguish Kaneff because the district court in Kaneff had diversity jurisdiction, whereas, this is a federal question case. Whether this is a federal question or diversity case has no impact on the choice of law analysis. See Gay, 511 F.3d at 389. Since Kaneff is otherwise indistinguishable from the present case, I am compelled to follow Kaneff in my choice of law analysis.

Defendants believe that Gay stands for the proposition that a difference in a court's jurisdictional basis can change the choice of law analysis, but defendants misread Gay. In Gay, the plaintiff filed an action pursuant to the Credit Repair Organization Act, 15 U.S.C. §§ 1679, et. seq, but the underlying agreement included a Virginia choice of law provision. In analyzing the contract's choice of law provision, the Gay Court first decided that it must use Pennsylvania choice of law principles in conducting the choice of law analysis. In reaching its conclusion to apply Pennsylvania choice of law principles, the Gay Court noted: "[I]f the District Court's jurisdiction in this federal question case had been based on diversity of citizenship of the parties we would apply Pennsylvania's choice-of-law principles as the court was in the Eastern District of Pennsylvania." 511 F.3d at 389 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). By concluding that the forum's choice of law principles applied in Gay as well, the Third Circuit recognized that Klaxon applies with equal force in both diversity and federal question cases. Accordingly, a court's jurisdictional basis is not dispositive of the choice of law analysis.

Interest and Protection Law [LIPL] provides that the maximum lawful rate of interest which an unlicensed lender may charge is 6%. 41 Pa.C.S. § 201. A Pennsylvania lender licensed under the Consumer Discount Company Act [CDCA] may charge an annual interest rate not to exceed 24%. 7 Pa. C. S. §§ 6213.E and 6217.1.A; Cash Am. Net of Nevada, LLC v. Com., Dep't of Banking, 8 A.3d 282, 285 (Pa. 2010). Accordingly, the plaintiffs would not be obligated to pay the interest in excess of the applicable LIPL or CDCA rate in Pennsylvania. 41 Pa.C.S. § 501.[4] "There can be no question that there is a true conflict between Delaware and Pennsylvania in their approach to and treatment of usurious interest." Kaneff, 587 F.3d at 622.

Pennsylvania choice of contract law principles "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Gay, 511 F.3d at 389 (citing Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir.1994)). Contractual choice of law provisions will be enforced unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which … would be the state of the applicable law in the absence of an effective choice of law by the parties.

Kaneff, 587 F.3d at 621 – 22; Gay, 511 F.3d at 389. The Kaneff Court noted that Delaware bore a substantial relationship to the transaction since the contract was signed

---

[4] "When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor." 41 Pa.C.S. § 501.

in Delaware. Nonetheless, the Third Circuit overruled the choice of law provision in the DTL contract finding Pennsylvania's "antipathy to high interest rates … represents such a fundamental policy that we must apply Pennsylvania law." Id. at 624.[5] Here, the same DTL contract is at issue, and the same policy against usurious interest rates is implicated.[6] Therefore, I will apply Pennsylvania law to interpret the loan agreement.[7]

The LIPL provides Pennsylvania borrowers with remedies against predatory lenders. As previously discussed, the LIPL and CDCA cap permissible interest rates at 6% and 24% respectively. 41 Pa.C.S. § 201; 7 Pa.C.S. §§ 6213.E, 6217.1.A. A borrower who is subject to a usurious interest rate may, upon notice to the lender, deduct the illegal portion of the interest from the borrower's scheduled payment. 41 Pa.C.S. § 501. However, the borrower must continue to make payments. Id. In the alternative, the borrower may sue the lender to recover the excess interest. Id § 502. Despite these protections, the LIPL does not invalidate, in its entirety, a loan agreement with a usurious interest rate. Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC, 995 A.2d 422, 440 (Pa. Cmwlth. Ct. 2010). A rate of interest in violation of the LIPL "renders the note

---

[5] Other factor's supporting Pennsylvania law included: "it is where [plaintiff] lives…. Pennsylvania is also the location of the collateral, [plaintiff's] car, and DTL was required to enter Pennsylvania in order to repossess the car. Finally, … Pennsylvania will have to live with the aftermath of the transaction." Kaneff, 587 F.3d at 623.

[6] Ultimately, the Kaneff Court ruled that the loan agreement's arbitration clause was enforceable under Pennsylvania law. Thus, defendants urge that the choice of law was not at issue and is dicta. I disagree. The Court's choice of law analysis which focused on the differing usury policies of Delaware and Pennsylvania was essential to its decision to compel arbitration. Kaneff, 587 F.3d at 622 ("We do consider the usury issue as a part and parcel of whether the arbitration clause should be enforced. The choice of law analysis cannot be divorced from that issue."). Accordingly, the Court's choice of law analysis is not only persuasive – it has precedential effect. See In re Friedman's Inc., 738 F.3d 547, 552 (3d Cir. 2013) (If a determination by our Court is not necessary to our ultimate holding, "it properly is classified as dictum.").

[7] Defendants argue that, "it is not clear that Pennsylvania law would apply to this case." Mot. to Dismiss 6. Other than their unsuccessful attempt to distinguish Kaneff, defendants provide no guidance on why Delaware law should govern.

[loan] not void, but only voidable as to the interest specified beyond the lawful rate." Id. (citing Mulcahy v. Loftus, 439 267 A.2d 872, 873 (Pa. 1970)). Thus, a loan agreement containing an excessive interest rate is still enforceable to the extent of the lawful rate.

Mr. Gregoria's loan agreement with DTL remained in force under Pennsylvania law. The LIPL permitted Mr. Gregoria to withhold the illegal interest or to pay the interest and sue for its recovery. The LIPL did not authorize Mr. Gregoria to stop making payments or to make payments late. Plaintiffs admit they were late in making payments in February and March 2012. Compl ¶ 20. It is undisputed that failing to make the scheduled payments when due is an event of default under the agreement. Pls.' Resp. ¶ 3; Compl. Ex. P-4 ¶ 8(a). Upon plaintiffs' default, DTL was contractually authorized to "foreclose upon its lien and liquidate any [c]ollateral securing [the] [a]greement according to law including by using self-help repossession." Compl. Ex. P-4 ¶ 9(b). Plaintiffs' 2006 Nissan Altima was the collateral securing the loan agreement. Pls.' Resp. ¶ 2; Compl. Ex. P-4 ¶ 2. Thus, DTL acquired a present interest to repossess plaintiff's Nissan Altima when plaintiffs failed to make timely payment in February and March 2012. TAR repossessed plaintiff's vehicle as DTL's agent and cannot be held liable under the FDCPA. Jordan, 731 F. Supp. at 657. ( finding that the FDCPA imposes no liability on a repossessor "who enforce[s] security interests when a 'present right' to the collateral exists…"). I will dismiss plaintiffs' FDCPA claim.

## B.      Count II - Racketeer Influenced and Corrupt Organizations Act

Plaintiffs allege that Mr. Howard violated the Racketeer Influenced and Corrupt

Organizations Act [RICO] by using TAR to collect an unlawful debt. The statute

prohibits "…any person employed by or associated with any enterprise engaged in, or the

activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through … collection of

unlawful debt." 18 U.S.C. § 1962(c). There is no dispute that plaintiffs have pleaded 1.)

the existence of an enterprise; 2.) the defendant's employment with the enterprise; 3.) and

that the defendant participated in the conduct or affairs of the enterprise. However, Mr.

Howard denies he caused TAR to collect an unlawful debt.

An unlawful debt includes any "debt (A) … which is unenforceable under State or

Federal law in whole or in part as to principal or interest because of the laws relating to

usury, and (B) which was incurred in connection with … the business of lending money

or a thing of value at a rate usurious under State or Federal law, where the usurious rate is

at least twice the enforceable rate." Id. § 1961(6). Here, plaintiffs allege that part of the

interest charged – at least 126% – was unenforceable under Pennsylvania's usury

statutes.[8] Even assuming DTL is licensed under the CDCA, a triple digit interest rate is at

---

[8] For the present motion, I find that these facts are sufficient to plead that the debt was incurred in connection with a business of lending money at a rate usurious under state law. However, RICO's definition of unlawful debt with reference to state law is problematic. DTL's lending practices are perfectly legal in Delaware, but they would be illegal in Pennsylvania where plaintiffs reside. Did Congress intend to impose RICO liability on a lender or debt collector based on the usury laws of the borrower's domicile? Do I resolve this conflict by traditional choice of law principles? In my opinion, this is the big legal question posed by the facts of this case, yet neither party briefed the subject. Therefore, I will treat the fact as uncontested for this motion.

least four times the enforceable rate.[9] Additionally, plaintiffs aver that DTL is a predatory

lender which is in the business of issuing loans at triple digit interest rates to "people with

poor credit and a crushing need for cash." Compl. ¶ 12; *see* Durante Bros. & Sons v.

Flushing Nat. Bank, 755 F.2d 239, 250 (2d Cir. 1985) (distinguishing occasional usurious

transactions from the business of making usurious loans).[10] Considering my duty to read

the RICO statute broadly to give full effect to its remedial purposes, *see* Sedima, S.P.R.L.

v. Imrex Co., Inc., 473 U.S. 479, 497-98 (1985), I find that these allegations are more

than sufficient to plausibly plead a civil RICO claim.

Mr. Howard argues that he cannot be considered a debt collector under RICO. I

am unpersuaded. First, he contends that he did not collect a debt. Rather, he only

collected collateral. This is a distinction without a difference. DTL repossessed the car to

"liquidate the collateral" to satisfy the unpaid balance of plaintiff's loan. Compl. Ex. P-4

¶ 9(b). Whether the defendant collected the car or cash, the purpose of the collection was

---

[9] If DTL is licensed under the CDCA, then it could legally charge interest at 24%. A triple digit interest rate is at least 100%; although, plaintiffs contend that the rate of interest is often 300%.

[10] In contrast, Mr. Howard relies heavily on the following passage from Durante Bros.: "The civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury." 755 F.2d at 248. To the extent Mr. Howard claims that DTL is only engaged in "the simple practice of usury," I am not persuaded. In Durante, plaintiff's sued Flushing National Bank for making usurious loans in violation of RICO. The Second Circuit struggled with whether the bank was in the business of making usurious loans or if there was a mere scheme to make a few isolated usurious loans. Id. at 250. In remanding the case, the Court noted that if the unlawful loans were isolated events rather than part of business practice the case could be dismissed on summary judgment. Id.

Unlike the lender in Durante, DTL is not a nationally chartered bank. According to plaintiffs, DTL's sole business is to make usurious loans. Indeed, the complaint suggests that this **predatory** lender is the very loan **shark** which RICO was crafted to target. *See* Id. ("The inclusion of "collection of unlawful debt" as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions."). Therefore, the complaint plausibly alleges that the unlawful debt was "incurred in connection with 'the business of' lending money at a usurious rate." Id. at 249.

to satisfy the debt.[11] Second, Mr. Howard notes that neither he nor TAR is in the business of lending money. The complaint contains no allegation to that effect, but plaintiffs have alleged that DTL is in the business of lending money. While an unlawful debt must be "incurred in connection with … the business of lending money," 18 U.S.C. § 1961(6), the statute does not require the collector to also be the lender. *See* 18 U.S.C. § 1962(c). Finally, Mr. Howard asserts "courts have consistently found that repossession agencies are not considered 'debt collectors' under the FDCPA (except for purposes of [15 U.S.C.] § 1692f(6)(A))." However, §1692f(6)(A) is the very section of the FDCPA implicated by the facts of this case. As I have already discussed, TAR is a debt collector for the purposes of §1692f(6)(A). Therefore to the extent the FDCPA may be used to interpret RICO, the FDCPA would support RICO liability for a repossession company. I will deny defendant's motion to dismiss plaintiffs' RICO claim.

### C.       Compulsory Joinder under Federal Rule of Civil Procedure 19

Federal Rule of Civil Procedure 19(a) specifies the circumstances in which a party is necessary for the proper resolution of an action.[12] Rule 19(b) provides for the dismissal of a case when the joinder of a necessary party is not feasible because the party is not

---

[11] I recognize that my analysis of the collateral v. debt issue parts company with three of my colleagues. *See* Gonzalez v. DRS Towing, LLC, et al, No. 12–5508 (E.D.Pa. Feb. 28, 2013); Collins v. Siani's Salvage, LLC, No. CIV.A. 13-3044, 2014 WL 1244057 (E.D. Pa. Mar. 26, 2014); Goldenstein v. Repossessors, Inc., No. 13-CV-02797, 2014 WL 3535112 (E.D. Pa. July 17, 2014). However, given the broad construction I must give the RICO statute and considering this is a motion to dismiss, I find that pleading repossession of collateral plausibly states a RICO claim.

[12] Rule 19(a) defines a necessary party as:
      (1) in the person's absence complete relief cannot be accorded among those already parties, or
      (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
        (i) as a practical matter impair or impede the person's ability to protect that interest or
        (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or
          otherwise inconsistent obligations by reason of the claimed interest

subject to service of process or joinder would destroy the court's subject matter jurisdiction. *See* Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). I find that DTL is a necessary party, and that joinder of DTL is feasible. Accordingly, I will order plaintiffs to join DTL as a defendant. Since DTL's can be made a party, dismissal of this action is inappropriate. *See* FRCvP 19(b) ("If a person who is required to be joined … **cannot be joined**, the court must determine whether the action … should be dismissed."); Speakman Co. v. Harper Buffing Mach. Co., 583 F. Supp. 273, 278 (D. Del. 1984) (citing 3A *Moore's Federal Practice* ¶ 19.052[2], at 19–91, 19–92 (2d ed. 1982)) ("Dismissal under Rule 19(b) is proper only if a person "cannot be made a party" under Rule 19(a).").

The first part of the analysis is to determine if DTL is a necessary party. I recognize that liability in a civil RICO action may be imposed on a joint and several basis. *See* State Farm Mut. Auto. Ins. Co. v. Lincow, 444 F. App'x 617, 621-22 (3d Cir. 2011) ("… the nature of the RICO offense mandates joint and several liability."). I also appreciate that joint tortfeasors are not necessary parties for the purposes of Rule 19. Temple v. Synthes Corp., 498 U.S. 5, 7-8 (1990). However, it is equally clear that the rights and liabilities of the parties are premised on the loan agreement between DTL and plaintiffs. "[W]here rights sued upon arise from a contract all parties to it must be joined." Ward v. Deavers, 203 F.2d 72, 75 (D.C. Cir. 1953); *see also* Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co., 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (citations omitted) ("It is well established that 'a contracting party is the paradigm of an indispensable party' for contract claims."). Accordingly, DTL is a necessary party.

Next, I must determine whether joinder of DTL is feasible. Here, it would appear that DTL's minimum contacts with Pennsylvania are sufficient to establish this court's jurisdiction over DTL.[13] DTL opened an office in Claymont, Delaware within one half mile of the Pennsylvania border. From this office, plaintiffs allege that DTL has extended title loans to many residents of Pennsylvania. When DTL forecloses on its lien, the effects on the borrower are felt in Pennsylvania. Given these allegations, the maintenance of suit in the Eastern District of Pennsylvania does not offend traditional notions of fair play and substantial justice. Since joining DTL to this federal question case will not destroy the court's subject matter jurisdiction, joinder of DTL is feasible.

## IV.    CONCLUSION

For the foregoing reasons, I will dismiss plaintiffs' claim under the Fair Debt Collection Practices Act. I will deny Mr. Howard's motion to dismiss plaintiff's RICO claim, and I will order plaintiffs to join Delaware Title Loans as a party.

An appropriate order follows.

---

[13] A federal court may exercise personal jurisdiction over a nonresident defendant to the same extent provided by the law of the state in which the federal court sits. Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania statute provides that a court in the Commonwealth may exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Accordingly, plaintiff must establish that defendant has minimum contacts with Pennsylvania "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, (1945)).